UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                         :

MONICA BOSWELL,                       :

                                  :

                Plaintiff,       :

                                  :          20-CV-8923 (JMF)

        -v-                     :

                                  :      MEMORANDUM OPINION

BIMBO BAKERIES USA, INC.,       :        AND ORDER

                                  :

                Defendant.    :

                                  :

-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is the latest in a long string of putative class actions brought by the same lawyer alleging that the packaging on a popular food item is false and misleading.[1]  In this case, Plaintiff Monica Boswell sues Defendant Bimbo Bakeries USA, Inc. ("Bimbo Bakeries"), which owns the Entenmann's brand of food products, alleging that the packaging on Entenmann's "All Butter Loaf Cake" — a picture of which appears in Appendix A to this Opinion and Order — is misleading because the cake contains not only butter, but also soybean oil and artificial flavors. Bimbo Bakeries now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss.  For the reasons that follow, the motion is GRANTED.

---

[1]    *See also, e.g.*, *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021) (vanilla soymilk); *Wise v. Wallace*, 20-CV-6831 (JPO), 2021 WL 3163599 (S.D.N.Y. July 26, 2021) ("Cheddar & Sour Cream Flavored" potato chips); *Gilleo v. J.M. Smucker Co.*, 20-CV-02519 (PMH), 2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021) (caramel sundae syrup); *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-CV-10102 (KMK), 2021 WL 1163716, (S.D.N.Y. Mar. 26, 2021) (chocolate vanilla Magnum ice cream bars); *Mazella v. Coca-Cola Co.*, No. 7-20-CV-05235 (NSR), 2021 WL 2940926 (S.D.N.Y. July 12, 2021) ("Slightly Sweet" iced tea); *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 (ARR), 2020 WL 729883 (S.D.N.Y. Feb. 13, 2020) (frozen mashed potatoes with "real" butter and "fresh" potatoes).

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Significantly, however, the Supreme Court has made clear that a court should not accept *non*-factual matter or "conclusory statements" set forth in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Instead, a court must follow a two-step approach in assessing the sufficiency of a complaint in the face of a Rule 12(b)(6) motion. *See id.* at 680-81. First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. *Id.* at 678-79. Second, the court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2008)). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Boswell's principle claims in this case are brought pursuant to Sections 349 and 350 of New York General Business Law. *See* ECF No. 13 ("FAC"), ¶¶ 78-85. The former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. Law § 349(a), while the latter bans "[f]alse advertising in the conduct of any business, trade or commerce," *id.* § 350. To state a claim under either provision, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and

that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 941 (2012)).  To satisfy the second element, "a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. TimeWarner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam)).  Significantly, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Id.* (cleaned up). Thus, a court must consider "the challenged advertisement as a whole, including disclaimers and qualifying language."  *Id.*; *see also id.* ("An allegedly misleading statement must be viewed in light of its context on the product label or advertisement as a whole . . . ." (internal quotation marks omitted)).

There are many decisions applying these principles (under New York law or analogous laws of other states) to food and drink packaging that is alleged, as here, to be false or misleading with respect to the product's actual ingredients.  *See, e.g.*, *id.* at 637-38 (citing cases); *Engram v. GSK Consumer Healthcare Holdings*, 19-CV-2886 (EK), 2021 WL 4502439, at *3 (E.D.N.Y. Sep. 30, 2021) (same); s*ee also Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (same); *In re: 100% Grated Parmesan Cheese Mktng. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (same).  As relevant here, these cases yield a standard that distinguishes between two categories of packaging: first, packaging with a prominent label that is unambiguous and misleading; and second, packaging with a prominent label that is ambiguous, but the ambiguity is resolved by reference to the list of ingredients or a Nutrition Facts panel.  In the *100% Grated Parmesan Cheese* case, for example, Judge Feinerman explained "the rule" as follows:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed. . . .  In other words, while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight.

275 F. Supp. 3d at 922 (citations omitted).  "This distinction," Judge Feinerman continued, "rests on the principle that, when product descriptions are merely vague or suggestive, every reasonable shopper knows the devil is in the details."  *Id.* at 923 (cleaned up); *see also, e.g.*, *Davis*, 297 F. Supp. 3d at 334 ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim.").

The Second Circuit's decision in *Mantikas* is a good example of a case involving packaging found to be unambiguous and misleading.  The plaintiffs in *Mantikas* alleged that the labeling on "whole grain" Cheez-It crackers was false or misleading because, while the boxes "contained the words 'WHOLE GRAIN' [or 'MADE WITH WHOLE GRAIN'] in large print in the center of the front panel," the ingredients list and Nutrition Facts panel revealed that the "grain content" of the crackers "was not predominantly whole grain, but rather enriched white flour."  910 F.3d at 634-35.  The Second Circuit held that the plaintiffs stated a valid claim under New York law because "the statements 'WHOLE GRAIN' and 'MADE WITH WHOLE GRAIN' . . . falsely imply that the grain content is entirely or at least predominantly whole grain."  *Id.* at 637; *see id.* at 638 ("The representation that a cracker is 'made with whole grain' would . . . plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain.").  And because these misleading statements

were unambiguous, the truthful disclosures in small print on the sides of the Cheez-It boxes did not "cure[]" the deception.  *Id.* at 637.  "Plaintiffs," the Court reasoned, "plausibly allege that the Nutrition Facts panel and ingredients list on whole grain Cheez-Its — which reveals that enriched white flour is the predominant ingredient — contradict, rather than confirm, Defendant's 'whole grain' representations on the front of the box."  *Id.*

Judge Feinerman's decision in the *100% Grated Parmesan Cheese* case is illustrative of the other category of cases.  The plaintiffs there challenged the labeling on various grated parmesan cheese products, all of which bore prominent labels "stating '100% Grated Parmesan Cheese' or some similar variation," but contained non-cheese ingredients, including "cellulose, an organic polymer with no nutritional value that is often used as a filler."  275 F. Supp. 3d at 915 (internal quotation marks omitted).  Applying the law of various states including New York, Judge Feinerman held that the plaintiffs failed to state a consumer-protection claim because "the description '100% Grated Parmesan Cheese' [was] ambiguous" and the ambiguity was resolved "by the readily accessible ingredient panels on the products that disclose the presence of non-cheese ingredients."  *Id.* at 923.  "Although '100% Grated Parmesan Cheese' *might* be interpreted as saying that the product is 100% cheese and nothing else," he explained, "it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated.  Reasonable consumers would thus need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate — the ingredient list.  Doing so would inform them that the product contained non-cheese ingredients."  *Id.*  As a result, he held, the defendants' "labeling and marketing, when viewed as a whole," were "not deceptive" as a matter of law.  *Id.*

This case falls on the *100% Grated Parmesan Cheese* side of the line because the description "All Butter" is ambiguous.  Taken literally, the description could be understood to mean that the product is entirely butter — although no reasonable consumer would adopt that reading because the product is obviously not a stick of butter and "All Butter" modifies "Loaf Cake."  Put differently, any reasonable consumer would be aware that the product is, notwithstanding the label "All Butter," likely to contain *other* ingredients commonly found in cake, such as flour, sugar, milk, and eggs.  *See, e.g.*, *Mantikas*, 910 F.3d at 638 (noting that "a consumer would 'be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables'" (quoting *Red v. Kraft Foods, Inc*., No. CV-10-1028 (GHW), 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012))).  Separate and apart from that, Boswell's own pleadings confirm that the description "All Butter" is susceptible to more than one interpretation and, thus, ambiguous.  In Boswell's original complaint, she alleged that "[w]here a food is labeled 'Butter _____ ' or uses the word 'butter' in conjunction with its name, reasonable consumers will expect all of the shortening ingredient [sic] to be butter."  ECF No. 1, ¶ 5.  In the operative First Amended Complaint, however, Boswell proffers a different definition: "'All Butter' tells consumers that no butter alternatives or substitutes will be used in the Product where butter is capable of being used."  FAC ¶ 3; *see id.* ¶ 62 (alleging that Boswell bought the cake "because she expected that 'all butter' meant no butter alternatives would be in the product, like vegetable oils").  And, of course, "All Butter" could merely be description of flavor, denoting

that the product tastes only of butter and does not include a second flavor, such as almond, chocolate, or cinnamon.  *Cf.* Appendix C.[2]

In short, like in the *100% Grated Parmesan Cheese* case and unlike in *Mantikas*, reasonable consumers here would not be "lulled into a false sense of security" by the bold lettering on the product's package.  *100% Grated Parmesan Cheese Litig.*, 275 F. Supp. 3d at 922.  Instead, reasonable consumers would need additional information to understand the meaning of "All Butter" and "would know exactly where to look to investigate — the ingredient list.  Doing so would inform them that the product contained" non-butter ingredients, including soybean oil and artificial flavors.  *Id.* at 923; *see* Appendix B.  It follows that Bimbo Bakeries's "labeling and marketing, when viewed as a whole, . . . are not deceptive."  *100% Grated Parmesan Cheese Litig.*, 275 F. Supp. 3d at 923; *see, e.g.*,  *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (summary order) (finding that "the district court properly analyzed the . . . packaging as a whole in analyzing whether it was potentially deceptive or misleading"); *Engram*, 2021 WL 4502439, at *5 ("[W]hen the front of the package is better characterized as ambiguous than misleading, courts looking at the alleged misrepresentations in their full context [] are more likely to grant a motion to dismiss."); *Davis*, 297 F. Supp. 3d at 335

---

[2]    Appendix C contains examples of products found on the Internet, of which the Court can and does take judicial notice.  *See, e.g.*, *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (summary order) (holding that the district court did not abuse its discretion in taking judicial notice of publicly available documents); *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*, No. 11-CV-8921 (DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) ("The Court generally has the discretion to take judicial notice of internet material.").

("The label taken as a whole makes clear that the juice was subject to pressure for food safety purposes.").[3]

That dooms not only Boswell's Section 349 and 350 claims, but also her other claims — for negligent misrepresentation, breaches of express warranty and implied warranty of merchantability, fraud, and unjust enrichment, FAC ¶¶ 86-106 — all of which require proof that the product labeling, taken as a whole, is deceptive.  *See, e.g.*, *Dashnau*, 2021 WL 1163716, at *3; *see also Cosgrove v. Blue Diamond Growers*, No. 19-CV-8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) ("[I]f Defendant's Product does not misrepresent the contents of the container as a matter of law, all of Plaintiffs' claims must be dismissed."); *Wallace*, 2021 WL 3163599, at *3 ("Because the Court has already determined that the chips' labeling is unlikely to deceive or mislead a reasonable consumer, these causes of actions are also dismissed for the reasons already stated.").[4]  In any event, the remaining claims fall short for a litany of other reasons as well.  First, the negligent-misrepresentation claim fails because Boswell fails to allege "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff."  *Dashnau*, 2021 WL 1163716, at * 8 (citations omitted); *see Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *6 (S.D.N.Y. Jan.

---

[3]      In light of this conclusion, the Court need not and does not reach the argument of Bimbo Bakeries that these claims are explicitly preempted by federal law.  *See* ECF No. 15 ("Def.'s Mem."), at 12-15.

[4]      In her First Amended Complaint, Boswell also asserts a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12, but she does not address it in her opposition papers.  The Court thus deems the claim abandoned.  *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

19, 2021); *Mazella v. Coca-Cola Co.*, No. 20-CV-05235 (NSR), 2021 WL 2940926, at *5

(S.D.N.Y. July 12, 2021).  Second, the express-warranty claim fails because Boswell does not

plausibly plead "All Butter" is an express factual statement amounting to a warranty.  *See*

*Mazella*, 2021 WL 2940926, at *7; *see also Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes*

*Co. LLC*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (summary order).  Third, the implied-

warranty-of-merchantability claim fails because Boswell does not allege that the loaf cake was

unfit for human consumption.  *See Barreto*, 518 F. Supp. 3d at 807; *Dashnau*, 2021 WL

1163716, at *9.  Fourth, Boswell's fraud claim does not satisfy the heightened pleading standard

imposed by Rule 9(b) of the Federal Rules of Civil Procedure.  *See Dashnau*, 2021 WL 1163716,

at *9; *Barreto*, 518 F. Supp. 3d at 808.  And finally, Boswell's unjust-enrichment claim is

"duplicative of [her] core theory of deception."  *Dashnau*, 2021 WL 1163716, at *10 (internal

quotation marks omitted); *see also Alce v. Wise Foods, Inc.*, No. 17-CV-2402 (NRB), 2018 WL

1737750, at *12 (S.D.N.Y. Mar. 27, 2018).

     For the foregoing reasons, Bimbo Bakeries's motion to dismiss is GRANTED, and

Boswell's First Amended Complaint is DISMISSED.[5]  Moreover, the Court declines to grant

Boswell's request for leave to file a second amended complaint.  *See* ECF No. 17, at 18.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P.

15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend,"

---

[5]    In light of the Court's analysis and conclusion, it need not and does not consider Bimbo
Bakeries's argument that Boswell lacks standing to seek injunctive relief.  *See* Def.'s Mem. 18-
20; *see also, e.g.*, *Axon*, 813 F. App'x at 703 n.1 (summary order) ("Because we conclude that
[plaintiff] has standing to seek damages and that her claims fail as a matter of law, we need not
resolve the question or determine whether [plaintiff] has standing to seek injunctive relief.");
*accord Wallace*, 2021 WL 3163599, at *1 n.2.

*Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).  Here, the problem with Boswell's claims is substantive, so amendment would be futile.  *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases).  Moreover, Boswell does not suggest that she is in possession of facts that would cure the problems with her claims.  *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Finally, the Court granted Boswell leave to amend her original complaint and explicitly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 12; s*ee, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate ECF No. 14, to enter judgment for Defendant, and to close the case.

SO ORDERED.

Dated: November 4, 2021
       New York, New York

JESSE M. FURMAN
United States District Judge

**Appendix A**



## Appendix B

INGREDIENTS: SUGAR, BLEACHED WHEAT FLOUR, EGGS, BUTTER, NONFAT MILK, WATER, FOOD STARCHMODIFIED (CORN), SOYBEAN OIL, LEAVENING (SODIUM ACID PYROPHOSPHATE, BAKING SODA, MONOCALCIUM PHOSPHATE), GLYCERIN, SALT, SORBITAN MONOSTEARATE, ARTIFICIAL FLAVORS, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, XANTHAN GUM, MONO- AND DIGLYCERIDES, PHOSPHORIC ACID, CELLULOSE GUM, SOY FLOUR, COCONUT FLOUR.                R19-310
**CONTAINS WHEAT, SOY, MILK, EGG, COCONUT.**


**INGREDIENTS:** SUGAR, BLEACHED WHEAT FLOUR, EGGS, BUTTER, NONFAT MILK, WATER, FOOD STARCH-MODIFIED (CORN), SOYBEAN OIL, LEAVENING (SODIUM ACID PYROPHOSPHATE, BAKING SODA, MONOCALCIUM PHOSPHATE), GLYCERIN, SALT, SORBITAN MONOSTEARATE, ARTIFICIAL FLAVORS, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, XANTHAN GUM, MONO- AND DIGLYCERIDES, PHOSPHORIC ACID, CELLULOSE GUM, SOY FLOUR, COCONUT FLOUR.

**Appendix C**











